IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AARON LYONS, #197782                                              PETITIONER

VS.                                        CIVIL ACTION NO.  3:19-cv-326-CWR-FKB

RONALD KING                                                       RESPONDENT


## REPORT AND RECOMMENDATION

Before the Court are the petition [1], traverse [11], response to reply to traverse [19], and amended petition [21] for habeas corpus relief filed by Aaron Lyons pursuant to 28 U.S.C. § 2254, to which the State has filed responses.  *See* [7], [14], [22].  After considering the filings, the undersigned recommends that the amended petition be dismissed with prejudice.

I.      FACTS AND PROCEDURAL HISTORY

In this action, Lyons challenges his June 8, 2015 convictions and sentences in the Circuit Court of Lincoln County, Mississippi, on the charges of manslaughter and armed robbery.  [1] at 1; *see* Miss. Code Ann. §§ 97-3-25, 97-3-79 (Rev. 2014).[1]  The state trial court sentenced Lyons to consecutive terms of twenty (20) years on the manslaughter conviction and thirty-five (35) years on the armed robbery conviction in the custody of the Mississippi Department of Corrections ("MDOC"), with five years suspended to be served on post-release supervision.  [8-2] at 35-36.

The Mississippi Court of Appeals summarized the facts of the crimes, as follows:

---

[1] The Court observes that Lyons was initially indicted for first degree murder (Miss. Code Ann. § 97-3-19), armed robbery (Miss. Code Ann. § 97-3-79), and conspiracy to commit armed robbery (Miss. Code Ann. §§ 97-1-1, 97-3-79). [8-1] at 10-11. The indictment was later amended to drop the "first degree" language, but the elements of the crime were unaffected.  *See id.* at 55-58.  On motion by the State, the trial court entered an Order to Nolle Prosequi the charge of conspiracy to commit armed robbery.  *Id.* at 139.  The jury convicted Lyons of the lesser-included offense of manslaughter and the charge of armed robbery.  *Id.* at 149-150.

Around 4:45 a.m. on January 16, 2004, a customer discovered the lifeless body of John Deere outside of the Pik & Pak convenience store, which Deere owned, in Brookhaven, Mississippi. Deere was robbed at gunpoint and shot three times. Shortly after Deere's body was discovered, a volunteer firefighter from the Summit Fire Department responded to a small roadside grassfire. The fireman discovered various items alongside the road, including a small metal cash box where the fire originated.

Lincoln County investigators soon arrived on the scene to inspect the area and seize evidence. Deere's widow later identified the cash box as belonging to her deceased husband. Investigators also collected DNA samples from the items found near the fire, but the DNA did not match any known person.

In 2013, the Lincoln County Sheriff's Department received a DNA sample belonging to Lyons. Lyons's DNA profile matched a sample recovered from a pair of black FUBU jeans discovered at the scene of the fire. Investigators then determined that Lyons lived in Brookhaven at the time of the crime with his then girlfriend, Lavatrus Harris. On September 3, 2014, Lyons was indicted in the Circuit Court of Lincoln County on charges of murder, armed robbery, and conspiracy to commit armed robbery.

At trial, Sonya Ewell testified that at some point early in their relationship, Lyons told her of the robbery and murder he and Harris committed together in Brookhaven in 2004. Ewell testified that on a trip in December 2011 from Humble, Texas, to Brookhaven to visit family, Lyons drove her and his cousin past the scene of the crime and gestured at the gas station and stated, "that's where it happened."

Lyons sought to exclude Ewell's testimony by claiming Ewell was his common-law wife, and spousal privilege precluded her testimony. Lyons also argued that Ewell was not a competent witness and was allowed to testify in violation of Mississippi Rule of Evidence 601. The trial court ruled that Lyons's admission to Ewell occurred before they allegedly entered into a common-law marriage, which meant the privilege did not apply, and the presence of Lyons's cousin in the vehicle removed the conversation from privilege even if Lyons could invoke the spousal privilege.

*Lyons v. State*, 237 So. 3d 763, 767-768 (Miss. Ct. App. 2017), *reh'g denied*, Oct. 24, 2017, *cert.*

*denied*, Cause No. 2015-CT-1004-SCT (Miss. Feb. 8, 2018).

On direct appeal, Lyons, through counsel, raised the following issues:

2

1. Was it error to allow Lyons's former common-law wife to testify contrary to evidence Rules 504 and 601(A)? [8-8] at 7; and

2. Were the verdicts contrary to the weight of the evidence? *Id.*

Lyons also filed a supplemental *pro se* brief, which asserted the following additional issues for review:

1. Did the prosecution violate Lyons's right to due process and fair trial by not disclosing a copy of the official paperwork from the DNA lab that showed the results of the DNA testing done on the purple cloth? *Id.* at 53.

2. Did the prosecution violate Lyons's right to a fair trial and due process by presenting evidence to create a materially false impression of the evidence? *Id.* at 55-56.

3. Did the trial court violate Lyons's right to a fair trial and due process as guaranteed by the state and federal Constitution by allowing a State's witness to use a cell phone while on the stand? *Id.* at 58.

4. Did the trial court violate Lyons's right to a fair trial by allowing a picture of the victim to be on display during closing arguments? *Id.* at 61.

5. Did the trial court err in not granting a mistrial when a witness alleged that Lyons had committed several robberies? *Id.* at 62.

6. Did the numerous deficiencies by defense counsel deny Lyons of his right to effective counsel? *Id.* at 65.

    a. Defense counsel failed to call several potential witnesses. *Id.*

    b. Defense counsel failed to adequately use impeachment and exculpable evidence. *Id.* at 68.

3

    c.   Defense counsel failed to investigate reports in the discovery material and credentials of expert witness. *Id.* at 69.

    d.   Defense counsel failed to object to certain evidence, testimony, photo of deceased on display during closing argument, and denial of jury instruction D-10. *Id.* at 71.

    e.   Defense counsel failed to suggest a lesser-included offense for armed robbery. *Id.* at 73.

7.  Did the trial court err in denying Jury Instruction D-10? *Id.* at 76.

8.  There is new and material evidence that was recently discovered which would probably produce a different result at a new trial. *Id.* at 76-77.

9.  Were the verdicts contrary to the weight of the evidence? *Id.* at 77.

10. Did the effect of cumulative errors deny Lyons his right to a fair trial? *Id.* at 82.

On April 18, 2017, the Mississippi Court of Appeals affirmed Lyons's convictions and sentences in a written opinion. *See Lyons*, 237 So. 3d at 763.

On February 20, 2018, Lyons signed his *pro se* Application for Leave to Proceed in Trial Court and Motion for Post-Conviction Relief ("PCR"), which was filed on February 26, 2018 in Mississippi Supreme Court Cause No. 2018-M-300. *See* [8-10] at 35-78. In his Application, Lyons raised the following issues:

1.  The State's witness, Sonya Ewell, used her cell phone while testifying. *Id.* at 40.

2.  Lyons was not allowed to be present during the jury instruction deliberations. *Id.* at 43.

3.  Lyons suffered ineffective assistance of trial counsel when his trial counsel:

    a.   Failed to interview or call several potential witnesses;

    b.   Failed to adequately use impeachment and exculpable evidence;

    c.   Failed to investigate reports in the discovery material;

d.  Failed to object to certain evidence and testimony, the display of the victim's photo during closing argument, and the trial court's denial of jury instruction D-10; and

e.  Failed to suggest a lesser-included offense to armed robbery.  *Id.* at 44-53.

4.  New and material evidence was recently discovered would probably produce a different result at a new trial.  *Id.* at 53-54.

5.  Lyons was denied his Fifth, Sixth, and Fourteenth Amendment rights under the Federal Constitution and Mississippi law due to the cumulative effect of the errors at trial. *Id.* at 54.

On October 24, 2018, the Mississippi Supreme Court denied Lyons's PCR, finding that his issues 1, 2, and 4 lacked an arguable basis.  [7-2] at 1.  The Mississippi Supreme Court found that his issue 3, setting forth claims of ineffective assistance of counsel, failed to meet the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.*  Based on the court's decisions on issues 1, 2, 3, and 4, it found that issue 5, arguing violation of his rights due to cumulative errors, lacked an arguable basis.  *Id.* at 2.

Lyons signed his initial petition for habeas corpus relief on April 21, 2019, and it was filed in this Court on May 8, 2019.  [1] at 1, 22.  The State responded with an Answer [7], to which Petitioner filed a Traverse [11], containing new grounds for relief.  The State filed a Reply to Traverse [16], responding to the new grounds for relief contained in the Traverse [11].  Thereafter, with leave of Court, Petitioner filed an Amended Petition [21] incorporating his new grounds for relief, to which the State has filed a Response [22].  In his filings, Petitioner sets forth the following grounds for relief:

1.  Ground One:  The verdicts were contrary to the weight of the evidence. [1] at 5; [11] at 11.

2.  Ground Two:  A State's witness repeatedly used her cell phone while she was on the witness stand.  [1] at 7; [11] at 14.

3.  Ground Three:  Defendant was not allowed to be present at jury instruction deliberation portion of trial.  [1] at 8; [11] at 16.

4.  Ground Four:  Prosecution suppressed evidence that was material and favorable to Defendant.  [1] at 10; [11] at 18.

5.  Ground Five:  Prosecutors created a false impression of the evidence.  [1] at 15; [11] at 20.

6.  Ground Six:  There was insufficient evidence to support the conviction.  [1] at 15; [11] at 23.

7.  Ground Seven:  Prosecutors displayed photo of victim during closing argument.  [1] at 16; [11] at 27.

8.  Ground Eight:  Trial court denied circumstantial evidence instruction. [1] at 17; [11] at 28.

9.  Ground Nine:  New and material evidence.  [1] at 17; [11] at 30.

10. Ground Ten:  Ineffective assistance of counsel.  [1] at 18; [11] at 31.

  i.    Counsel failed to interview and/or call known witnesses who had already told police another individual told them he committed the crime.  *Id.*

  ii.   Counsel failed to interview and/or call an individual who said he had driven another individual to the crime scene and watched him commit the crime.  [1] at 18; [11] at 32.

  iii.  Counsel failed to adequately use impeachment and exculpable evidence.  [11] at 33-34; [21] at 1.

  iv.   Counsel failed to object to a number of occurrences that were unfairly prejudicial to Petitioner's fundamental and substantive constitutional rights.  [11] at 35-38; [21] at 1.

      (a) Defense counsel failed to object to the admission of purple cloth found at the secondary crime scene and related DNA test results.  [11] at 36.

      (b) Defense counsel failed to object to the display of the deceased victim's photo during closing argument.  *Id.* at 37.

(c) Defense counsel failed to object to the trial court's denial of jury instruction
D-10 on circumstantial evidence. *Id.* at 37-38.

In his Traverse, Petitioner asserts that he is actually innocent of the crimes, therefore he will

suffer a miscarriage of justice if the Court does not consider all of his grounds for relief,

including Grounds Four, Five, and Six. *Id.* at 6-11. This matter is now ripe for review.

## II.    DISCUSSION

At the outset, the Court notes that its review of Lyons's conviction is circumscribed.

Federal courts do not sit as "super" state supreme courts in habeas corpus proceedings to review

errors under state law. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Instead, "[a]

state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in

violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac*, 456 U.S.

107, 110 (1981)(citing 28 U.S.C. § 2254(a)).

Petitions for a writ of habeas corpus are governed by 28 U.S.C. § 2254. As amended by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the relevant portions of

§ 2254 provide, as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the
State; or

(B)      (i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to
protect the rights of the applicant,

(2) An application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust the remedies
available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(b)-(d)(1996).

Claims that are adjudicated on the merits by the state court, either in direct appeal or in a post-conviction proceeding, are subject to the highly deferential standard of review of the AEDPA.  The Supreme Court has repeatedly emphasized that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.  Rather, the application must be not only incorrect, but also "objectively unreasonable."  *Id.* at 409.

A.  Ground One:  Were the verdicts contrary to the weight of the evidence?

Petitioner argues that there is a lack of evidence supporting his convictions.  [1] at 5; [11] at 11-14.  He asserts that the verdicts are based on false testimony, a lack of physical evidence,

and suspect DNA testing. *Id.* An argument challenging the weight of the evidence does not state a cognizable claim for habeas relief. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986); *see also*, *Jordan v. Epps*, No. 3:09cv544-DPJ-FKB, 2012 WL 5997046 (S.D. Miss. Aug. 8, 2012). "Simply put, differences in opinion go to the weight of the evidence, not to its admissibility, and such disputes are within the province of the jury to resolve." *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Accordingly, Lyons's challenge to the weight of the evidence is not a valid claim for habeas corpus review.

    B.  <u>Ground Two: A State's witness repeatedly used her cell phone while she was on the witness stand.</u>

    Petitioner asserts that one of the State's witnesses, Sonya Ewell, used her cell phone while she was on the witness stand. [1] at 7; [11] at 14-16. Lyons argues that while Ewell was on the witness stand, she used her phone to text a witness who was scheduled to testify the following day. [11] at 15. He asserts that her cell phone usage deprived him of a constitutionally and fundamentally fair trial. *Id.* Lyons raised this issue in his *pro se* supplemental brief on direct appeal before the Mississippi Court of Appeals. *Lyons*, 237 So. 3d at 772. That court found the issue to be without merit because there was no evidentiary support for this argument, and Lyons failed to raise the issue before the trial court. *Id.* Lyons also made the argument before the Mississippi Supreme Court on his PCR. *See* [7-2]. Likewise, the Mississippi Supreme Court denied relief on the issue. *Id.*

    The undersigned finds that the state courts' decisions on this issue were neither contrary to, nor involved an unreasonable application of, clearly established federal law. While Lyons submits two affidavits from eyewitnesses who aver that they observed Ewell "using and handling" her cell phone while she was on the witness stand, [11-1] at 19-20, there is no

indication in the record that the trial court observed her doing so, or that she was using the cell phone to communicate with and ask for advice from a yet-to-be-called witness located outside the court, as Lyons argues.  Moreover, as pointed out by the Mississippi Court of Appeals, Lyons's counsel did not lodge an objection to her alleged conduct.  Lyons's arguments alleging deprivation of a fair trial due to Ewell's alleged actions are simply speculative and conclusory. "Although *pro se* petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)(quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).[2]

Furthermore, Lyons's citation to Rule 1.04 of the Mississippi Uniform Rules of Circuit and County Court Practice, prohibiting the "broadcasting, televising, recording, or taking photographs in the courtroom . . ." does not elevate this argument to a federal constitutional violation.  Even if this occurred in violation of the state court rule, "[t]he failure of a convicting court to comply with state procedural rules is strictly a matter of state law and, accordingly, is not cognizable in federal *habeas corpus* proceedings."  *Hall v. Scott*, 1994 WL 442491, *2 (5th Cir.  Aug. 2, 1994)(unpublished)(citing *Smith v. Phillips,* 102 S.Ct. 940, 948 (1982)).  "The alleged failure to follow state procedural rules must amount to a violation of due process that renders the trial as a whole fundamentally unfair before it can provide a basis for federal *habeas* relief."  *Id.*(citing *Sawyer v. Butler,* 848 F.2d 582, 594-95 (5th Cir.1988), *aff'd sub nom. Sawyer v. Smith,* 110 S.Ct. 2822 (1990)).  Thus, this argument fails to provide the basis for habeas relief.

---

[2] Moreover, the record does not support Lyons's arguments.  He contends that the witness, Sonya Ewell, was on the stand beginning "well before noon and . . . until well after noontime" on the day she testified.  [11] at 15.  He argues that Ewell texted or communicated with the yet-to-be-called witness, Lavatrus Harris, while Ewell was on the stand, and he attempts to base this argument on Harris's testimony given the next day.  [11] at 15.  The trial record shows that although Harris admitted to receiving a text from Ewell around twelve o'clock the day Ewell testified, *see* [8-5] at 43, Ewell was not on the witness stand at that time.  *See* [8-4] at 90-92. Instead, Ewell did not take the stand until mid-afternoon.  *Id.*

C. Ground Three:  Was Lyons improperly excluded from jury instruction deliberation?

Lyons argues that the trial court erred when it did not allow him to attend the "in-chambers jury instructions deliberations" or conference, as it was a "critical stage" of trial.  [1] at 8; [11] at 17.  He asserts that, had he been present, he would have argued for a jury instruction on lesser-included offenses to armed robbery and his preference for a circumstantial evidence instruction.  [11] at 18.  He raised this argument in his motion for post-conviction relief, [8-10] at 8, and the Mississippi Supreme Court found it to be without merit.  [7-2] at 1.  The State argues that the Mississippi Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

It is well-settled that "[a] defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue."  *United States v. Graves*, 669 F.2d 964, 972 (5th Cir. 1982)(citing Fed. R. Crim. P. 43(c)(3)(defendant need not be present "[a]t a conference or argument upon a question of law.")); *accord*, *United States v. Fabuluje*, 2000 WL 178393 (5th Cir. Jan. 27, 2000); *see also*, *McKinney v. Horton*, 826 F. App'x 468, 477 (6th Cir. 2020)(finding that a defendant's right to be present during critical stages of trial does not extend to conferences regarding jury instructions).  Accordingly, this ground does not form a basis for habeas relief.

D. Ground Four:  Did the prosecution suppress DNA evidence that was material and favorable to Defendant?

Lyons argues that the published DNA test results of fabric collected at the secondary crime scene near the stolen cash box were not disclosed to him, therefore the prosecution suppressed evidence that was material and favorable to him.  [1] at 10.  At trial, his counsel did

11

not object to the admission of the DNA test results.  [8-5] at 69.  Lyons argued on direct appeal that the trial court committed error when it allowed the State to present DNA evidence from an untimely disclosed DNA report.  *Lyons,* 237 So. 3d at 771.  The Mississippi Court of Appeals found that the issue was not preserved for appeal because his counsel failed to make a contemporaneous objection.  *Id.*

In its Answer [7], the State argued that federal habeas relief on this ground is barred because Lyons's counsel failed to make a contemporaneous objection to the admission of the test results.  The State also pointed out that Lyons failed to present a separate claim of ineffective assistance of counsel on this issue in his habeas petition to overstep the procedural bar.  [7] at 9 n.6.  In his traverse [11] and amended petition [21], Lyons responded with a separate ineffective assistance of counsel claim based upon his counsel's failure to make a contemporaneous objection, *see* Ground Ten *infra*, as well as claims of actual innocence.

Where a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural rule is "adequate" if it is regularly and consistently applied.  *Johnson v. Mississippi*, 486 U.S. 578, 187 (1988); *see also Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)("An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims.").  The Fifth Circuit has specifically held that Mississippi state courts consistently and regularly apply the bar imposed for failure to raise

issues at trial, *i.e.*, the contemporaneous objection rule. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992); *see also Day v. King*, No. 1:03-cv-624-DMR-JMR, 2006 WL 2541600, at *4 (S.D. Miss. Aug. 31, 2006). Thus, Lyons defaulted this claim pursuant to an independent and adequate state procedural rule.

Turning to the next step in the analysis, federal habeas review of Lyons's claim is barred unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Sones*, 61 F.3d at 416. To demonstrate cause for a procedural default, Lyons must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). Ineffective assistance of counsel can establish "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-489 (1986). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).

As discussed *infra* in Ground Ten, the undersigned finds that the Mississippi Supreme Court reasonably applied *Strickland* to find that Lyons's counsel did not provide ineffective assistance when he did not contemporaneously object to the admission of DNA test results. Thus, Lyons cannot use this ground to establish "cause" for his default. Absent a showing of cause, it is unnecessary to address whether actual prejudice exists. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Lyons may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To meet this standard, Lyons must prove, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)(citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). The "fundamental miscarriage of justice" exception is triggered only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. . . ." *See Murray*, 477 U.S. at 496. Petitioner must support such a fundamental miscarriage of justice allegation with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Evidence does not qualify as 'new' under the *Schlup* actual innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2714 (2019)(quoting *Moore v. Quarterman*, 513 F.3d 454, 465 (5th Cir. 2008)).

In this case, Lyons has failed to meet this standard because he has failed to present any new evidence to provide a showing of actual innocence. All but one piece of evidence to which he points – unsworn witness statements fraught with hearsay, an affidavit charging another person with accessory-after-the-fact, an FBI report, and one page of a police memo – are not new evidence and existed at the time of his trial. *See* [11-1] at 7-16, 22. In other words, the evidence was "always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Hancock*, 906 F.3d at 390. And the post-trial letter from Ewell to Lyons, discussed *infra* at Ground Nine, does not qualify as new evidence. *See Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th

14

Cir. 1998)(finding that evidence that in its "essence and character" was presented to the jury is neither "new nor newly discovered."). Thus, the Court is barred from reviewing this claim for habeas relief.

E. Ground Five: Whether prosecutors created a false impression of the evidence.

Lyons argues that prosecutors allowed Harris to create a "false impression of the evidence" when she testified that Lyons used the fabric to wipe off the cash box, even though his DNA was not found on the cloth, but Harris's DNA was.  [1] at 15.[3]  Later in trial, his counsel did not object to the admission of the fabric allegedly used to wipe off the cash box and collected at the secondary crime scene, but through cross-examination of the DNA analyst, he emphasized that none of Lyons's DNA was found on the fabric.  [8-4] at 64-65; [8-5] at 72-73.  Lyons now argues that his counsel was ineffective when he did not object to the admission of the fabric Lyons allegedly used to wipe off the cash box.  The State responds that federal habeas review of this ground is barred because Lyons's counsel did not contemporaneously object to the admission of the fabric.  [7] at 7.

As established *supra* in Ground Four, the contemporaneous objection rule acts as an adequate and independent procedural rule that bars federal habeas review of this claim.  *Smith*, 970 F.2d at 1387.  To overcome this procedural bar, Lyons must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

As discussed *infra* in Ground Ten, Lyons's claim of ineffective assistance of counsel on this basis fails, thus he has failed to satisfy the "cause" for his default.  Absent a showing of

---

[3] Defense counsel did, however, subject Harris to a probing cross-examination that questioned her reasons for not reporting the alleged crime for several years and explored her motivations for testifying at trial.  [8-5] at 42-47.

cause, it is unnecessary to address whether actual prejudice exists.  *Saahir*, 956 F.2d at 118.

Likewise, as discussed *supra* in Ground Four, Lyons's proposed evidence does not meet the

criteria of *Schlup*'s new evidence standard.  *See Hancock*, 906 F.3d at 390.  Thus, Lyons fails to

overcome the procedural bar, and the Court cannot review this claim for habeas relief.

F.  Ground Six:  Was there insufficient evidence to support the conviction?

In his initial petition, Lyons argues that there was insufficient evidence to support a

conviction.  [1] at 15.  In his traverse, he expands his arguments to attack the credibility of the

two witnesses who directly implicated him and to which he allegedly confessed, and he

highlights the lack of physical evidence connecting him to the crimes.  [11] at 24-27.  In its

answer, the State pointed out that Lyons never raised an argument regarding the sufficiency of

the evidence at any stage of his state court proceedings.  [7] at 8.

A review of the filings substantiates the State's position: Lyons never raised a sufficiency

of the evidence claim in either his direct or collateral appeals.  A "sufficiency of the evidence"

claim is distinct from a "weight of the evidence" claim, such as Lyons argued in Ground One

*supra*.  *Compare Jackson v. Virginia*, 443 U.S. 307 (1979), *with Tibbs v. Florida*, 457 U.S. 31

(1982).  No relief would now be available in state court because Lyons has filed both a direct

appeal and a PCR motion.  *See* Miss. Code Ann. § 99-39-23(6)(providing that a second or

successive PCR motion is barred, with certain exceptions, including that petitioner has

"evidence, not reasonably discoverable at the time of trial . . . .").

The Fifth Circuit "has routinely held that Mississippi's post-conviction procedural bars

for untimely petitions and successive petitions are independent and adequate state procedural

grounds" in the habeas context.  *Spicer v. Cain*, 2021 WL 4465828, *3 (5th Cir. Sept. 29,

16

2021)(citing *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998)(successive bar of § 99-39-23(6))(listing cases)).

The Court observes, moreover, that the Mississippi Supreme Court rejected Lyons's claim of newly discovered evidence in his PCR. *See* [7-2].  Thus, Lyons has technically exhausted his state court remedies on these claims, *see Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995), and this claim would now be barred in state court.  *See also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001)("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal *habeas corpus* relief.")(citing *Sones*, 61 F.3d at 416).

A federal court may not review the merits of a procedurally-barred claim absent a showing either of cause for the default and actual prejudice or that failure to address the claim would result in a miscarriage of justice.  *Sones*, 61 F.3d at 415.  Because Lyons filed a *pro se* supplemental brief on direct appeal and proceeded *pro se* in his PCR, he cannot blame counsel for the failure to raise this claim.  He does not, furthermore, assert that an "external impediment" prevented him from making this argument.  Accordingly, he has failed to meet the standard for establishing "cause" for his procedural default.  Absent a showing of cause, it is unnecessary to address whether actual prejudice exists.  *Saahir*, 956 F.2d at 118.

Likewise, as discussed *supra* in Ground Four, Lyons's proposed evidence does not meet the criteria of *Schlup*'s new evidence standard necessary to establish a fundamental miscarriage of justice.  *See Hancock*, 906 F.3d at 390.  When "state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims."

17

*Sones*, 61 F.3d at 416.  Thus, Lyons fails to overcome the procedural bar, and the Court cannot review this claim for habeas relief.

G.  Ground Seven: Whether the display of the victim's photo by prosecutors during closing arguments violated Lyons's constitutional rights.

Lyons argued that the prosecutors' display of the victim's photo during closing arguments served to incite the jury's passion.  [1] at 16.  Lyons made this argument as a part of his *pro se* supplemental brief on direct appeal.  *Lyons*, 237 So. 3d at 772.  The Mississippi Court of Appeals found that, under state law, the admissibility and use of photographs during trial and closing argument is within the discretion of the trial judge, so long as it is not solely employed for the purpose of inflaming the jury.  *Id.*  After reviewing the record, the Mississippi Court of Appeals concluded that the trial judge did not abuse his discretion by allowing the photograph to remain, nor did the record indicate that the State intended to inflame the jury through its use.  *Id.* Lyons's counsel, furthermore, did not object to the display of the photo.  [8-5] at 93.

Lyons has failed to establish that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.  A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.  *See Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  Furthermore, "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009).  As there is no indication that the jury's guilty verdict was "surely" attributable to the display of a previously-admitted photograph of the victim prior to his death, *see* [8-4] at 79, [8-6] at 56, the use of this photograph did not affect Lyons's substantial rights.  *See Sullivan v.* Louisiana, 508 U.S. 275 (1993); *see*

18

*also Parker v. Cain*, 445 F. Supp. 2d 685, 705 (E.D. La. 2006)(denying habeas relief to petitioner

under harmless error analysis when prosecutor improperly published crime scene victim

photographs to jury during closing argument). Accordingly, this ground does not form the basis

for habeas relief.

H.  Ground Eight:  Whether the trial court erred when it denied the circumstantial evidence
    instruction.

Petitioner argues that the trial court erroneously denied his proposed circumstantial

evidence instruction to the jury, also known as a "quantum-of-proof" instruction.  [1] at 17; [11]

at 28-30; *see also* [8-2] at 15.[4]  Lyons pursued this argument in his *pro se* brief on direct appeal.

*Lyons*, 237 So. 3d at 774.  The Mississippi Court of Appeals concluded that because a "quantum-

of-proof" instruction had been given by the trial court in Instruction D-3,[5]  Lyons's proposed

Instruction D-10 would have been redundant, thus no reversible error existed.  *Id.*

"Improper jury instructions in state criminal trials do not generally form the basis for

federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760 (5th Cir. 2002)(citing *Estelle v.*

*McGuire*, 502 U.S. 62, 71-72 (1991)(stating that federal habeas courts do not grant relief solely

on the basis that a jury charge was erroneous)).  Errors in jury instructions do not state a claim

for relief unless the error resulted in "prejudice of constitutional magnitude." *Sullivan v.*

*Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986).  Put another way, the relevant inquiry is whether

the failure to give an instruction "by itself so infected the entire trial that the resulting conviction

---

[4] Lyons's preferred jury instruction, Instruction D-10, stated that "[t]he Court instructs the jury that if the State of
Mississippi has relied on circumstantial evidence to establish its theory of the guilt of the Defendant, then the
evidence for the State must be so strong as to establish the guilt of the Defendant, not only beyond a reasonable
doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt."
[8-2] at 15.
[5] Instruction D-3 stated that "[t]he Court instructs the jury that a reasonable doubt may arise from the whole of the
evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence; but however it
arises, if it arises, it is your sworn duty to find the Defendant, AARON LYONS, Not Guilty."  *Id.* at 3.

violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbee*, 431 U.S. 155, 155 (1977).  Moreover, the instruction is to be considered in the context of the instructions as a whole and the entire trial record.  *Estelle*, 501 U.S. at 72.

In this case, the Court finds that Lyons has failed to establish that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. Instruction D-3, as presented by Lyons's counsel and given by the trial court, exactly tracked the language of a "quantum-of-proof" jury instruction under Mississippi law.  *Lyons*, 237 So. 3d at 774 (quoting *Berry v. State*, 859 So. 2d 399, 405 (Miss. Ct. App. 2003)).  While Instruction D-3 does not specifically address circumstantial evidence in the manner that Lyons desired, it correctly stated Mississippi law.  And more pertinent to Lyons's federal habeas claim, the denial of Instruction D-10 does not constitute a violation of federal law or the Constitution. Accordingly, this argument fails to provide a basis for habeas relief.

I.  <u>Ground Nine:  Is there new and material evidence that was undiscoverable before trial?</u>

Lyons argues that a letter from Sonya Ewell, a trial witness, sent to him in June 2015, after trial, details the reasons that she was angry with him and provides impeachment evidence. [1] at 17; *see* [11-1] at 4-5.  He argues that introduction of this evidence at trial would have changed the jury's verdict.  [11] at 30.  He presented this argument, along with the letter, to the state courts in his direct appeal and in his PCR motion.  *Id.*; [8-8] at 76-77; [8-10] at 53-54.  The Mississippi Supreme Court addressed the argument in his PCR motion and found that the claim lacked an arguable basis.  [7-2] at 1.  While Ewell's letter does chronicle some of her experiences with him and references post-trial communication with a fellow witness, Lavatrus Harris, it certainly does not exonerate him of the crimes for which he was convicted.  [11-1] at 4-

5.  The Mississippi Supreme Court's conclusion on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, this argument does not provide the basis for habeas relief.

    J.   Ground Ten:  Did Lyons suffer ineffective assistance of counsel?

       An ineffective assistance of counsel claim is analyzed under the two-prong test found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The question for this Court is whether the state court's application of the *Strickland* standard was unreasonable.  *Mitchell v. Epps*, 641 F.3d 134, 141 (5th Cir. 2011).  To meet the *Strickland* standard, first, petitioner "must show that counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  If a petitioner can establish deficient performance by his attorney, then he must also demonstrate the second prong of *Strickland*, "that [his attorney's] deficient performance prejudiced [his] defense."  *Id.*

       The standard of review of an attorney's performance is "highly deferential," considering only the facts and resources available to the petitioner's counsel at the time of trial.  *Id.* at 589; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994).  When considering an ineffective assistance of counsel claim, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

       When applying *Strickland* and section 2254(d), review is "doubly deferential."  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  As stated in *Mitchell v. Epps*, 641 F.3d 134 (5th Cir. 2011),

> For the district court, "[t]he pivotal question [was] whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Harrington*[, 131 S. Ct. at 785].  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*
at 788.  "A state court's determination that a claim lacks merit precludes federal
habeas relief so long as fairminded jurists could disagree on the correctness of the
state court's decision." *Id.* at 786.

*Mitchell*, 641 F.3d at 141(alterations, except citation alteration, in original)(citation omitted).

With this high standard of deference in mind, the Court turns to evaluate Lyons's claims that his

trial counsel was ineffective.

    i.    <u>Was counsel ineffective when he allegedly failed to interview and/or call known
witnesses?</u>

Lyons argues that he suffered several instances of ineffective assistance of counsel

related to his counsel's failure to interview and/or call witnesses.  He asserts that his counsel was

ineffective when he did not interview and/or call as witnesses at trial individuals who gave

statements to police that another person, Kenneth Baggett, had confessed to them that he had

committed the crime.  *See* [11-1] at 8-16.  He also asserts that his counsel was ineffective when

he failed to interview and/or call as a witness an individual, William Hutson, who said he had

driven Baggett to the crime scene and watched him commit the crime.  [11] at 32.  He made

these arguments in his direct appeal and in his PCR.  On direct appeal, the Mississippi Court of

Appeals found no evidence of deficient performance or prejudice to Lyons, but preserved the

issue for post-conviction relief.  *Lyons*, 237 So. 3d at 774.  The Mississippi Supreme Court

denied relief on these arguments in Lyons's PCR.  [7-2] at 1.

Having reviewed the state court decisions and the trial transcript, the undersigned finds

that the state courts' application of the *Strickland* standard was reasonable.  To satisfy the

prejudice prong of *Strickland*, a petitioner must show a reasonable probability that, but for his

attorney's failure to interview witnesses or otherwise investigate his case, the result of the trial

would have been different.  *Strickland*, 466 U.S. at 694.  Complaints of uncalled witnesses are

not favored in a federal habeas corpus proceeding because, among other reasons, allegations of what a witness would have testified are largely speculative. *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986); *see also Sayer v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). To establish an ineffective assistance of counsel claim based on an attorney's failure to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). To establish that an attorney was ineffective for failure to investigate, a habeas petitioner "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner's assertions that his counsel failed to investigate and interview certain witnesses are conclusory and unsupported by the record. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). To the contrary, the record reflects that counsel subpoenaed a long list of witnesses, including the witnesses who Lyons argues should have testified. *See* [8-1] at 68-100; [11-1] at 8-16. The statements Lyons now presents are unsworn and contain hearsay. [11-1] at 8-16. And these witness statements were the subject of a motion in *limine* filed by the State and opposed by defense counsel. [8-1] at 101-104, 140-148. Although there is no written order or oral ruling on the record as to this motion in *limine*, the trial record indicates that the court agreed that the statements were inadmissible, and that the motion

could be mooted by presentation of other testimony subject to cross-examination by defense counsel.  [8-3] at 141.

Although Lyons's attorney did not call these witnesses to testify at trial, the existence of these witnesses and the substance of their statements were presented to the jury.  At trial, the prosecution called the District Attorney as a witness, and through direct and cross-examination, the District Attorney testified to the jury that a number of people had given statements that Baggett had confessed to them that he had committed the crime.  [8-4] at 2, 8-21.  On cross-examination, Lyons's attorney elicited testimony from the District Attorney that Hutson had given a statement that he was there with Baggett when the crime occurred and that Hutson had even gone to the crime scene and showed investigators and the District Attorney how the crime occurred.  *Id.* at 8-12.  The District Attorney further testified that a justice court judge had held a preliminary hearing, found probable cause that Baggett had committed the crime, and had bound the case over to the grand jury and that the grand jury, after considering the evidence (including sworn testimony from these witnesses to whom Baggett had confessed), returned an indictment against Baggett for capital murder.  *Id.* at 2, 5-6.[6]

"Presentation of testimonial evidence is a matter of trial strategy, and, particularly on federal habeas review, claims concerning what a witness might have testified if called at trial are largely speculative."  *Nixon v. Epps*, 405 F.3d 318, 324-325 (5th Cir. 2005).  Counsel's decision not to call these proposed witnesses falls squarely into the category of trial strategy.  Through the District Attorney, Lyons's attorney was able to get the existence of these witnesses and the

---

[6] The District Attorney explained that he decided to dismiss the indictment against Baggett due to a lack of corroborating physical evidence, a DNA test result that excluded Baggett, and the potential inadmissibility of certain statements.  [8-4] at 3-4, 8, 21-23.

substance of their statements to the jury, and by not calling them as witnesses at trial, he was able

to deny the prosecution an opportunity to impeach these witnesses through cross-examination.  A

"conscious and informed decision on trial tactics and strategy cannot be the basis of

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the

entire trial with obvious unfairness."  *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir.

2009).  The court has reviewed the trial transcript, and that standard is not met.  Because the

Mississippi Supreme Court reasonably applied *Strickland* to these claims, these arguments

cannot form the basis of habeas relief.

ii.    <u>Did counsel fail to adequately use impeachment and exculpable evidence?</u>

At trial, State's witness Harris testified that Lyons used a purple or gray fabric to wipe

down the interior of the get-away car.  [8-5] at 34-35.  Two pieces of purple cloth were found on

the roadside a few miles from the crime scene, along with the stolen cash box that had been set

afire, a pair of jeans, and other items.  [8-4] at 57.  A state forensic analyst, Kathryn Rodgers,

testified that none of Lyons's DNA was obtained from the pieces of purple cloth, but that

Harris's DNA was found on one of them.[7]  [8-5] at 65-66, 72-73.  Another witness described that

the same type of purple cloth was melted onto the cash box from the fire.  [8-4] at 58.

Lyons argues that his counsel provided ineffective assistance of counsel when he not only

failed to oppose the admission of the DNA test results, he also failed to use the lack of his DNA

on the purple cloth or on the cash box to exonerate him.  [11] at 34.  Further, he argues that his

counsel was ineffective when he did not introduce at trial an FBI report that allegedly shows

---

[7] Rodgers testified, furthermore, that a single source DNA profile found on the jeans matched exactly Lyons's DNA profile and that "the likelihood that anyone else [other than Lyons] would have that same DNA profile is less than one in 999 trillion."  [8-5] at 67-68, 75.

25

fibers found on the purple cloth were consistent with fibers from Kenneth Baggett's car. [11] at 35; [8-2] at 28-32. Lyons raised these arguments alleging ineffective assistance of counsel in his PCR, and the Mississippi Supreme Court found that he did not meet the *Strickland* standard. [7-2].

After a review of the trial transcript, the undersigned cannot find that the decision of the Mississippi Supreme Court was either contrary to or an unreasonable application of, clearly established federal law on this issue. As an initial matter, Lyons fails to identify a legitimate basis to oppose the admission of the DNA test results. Moreover, the trial transcript directly contradicts Lyons's assertions that his counsel failed to use the DNA test results to his advantage. Throughout trial, Lyons's counsel highlighted and argued the lack of DNA evidence and other evidence connecting Lyons to the primary and secondary crime scenes. He showed the reasons that the primary state's witnesses, Ewell and Harris, had to implicate him in the crime. [8-5] at 94-96. Lyons's counsel cross-examined the DNA analyst about her reports and the samples on which Lyons's DNA was not found. *Id.* at 70-74. In closing argument, defense counsel made clear that "absolutely nothing," DNA or other evidence, connected Lyons to the scene of the homicide. *Id.* at 94, 97. And defense counsel pointed out that because no one from the FBI laboratory testified, the jury could "assume that nothing from the FBI laboratory connects this crime to Aaron Lyons." *Id.* at 93. Defense counsel effectively used DNA test results and other test results as a part of "trial tactics and strategy." Accordingly, the Mississippi Supreme Court's application of *Strickland* was reasonable, and this argument does not provide the basis for habeas relief.

iii.   Did defense counsel provide ineffective assistance when he failed to object to the admission of the purple cloth?

Lyons argues that his defense counsel's performance was deficient when he did not object to the admission of the purple cloth he allegedly used to wipe down the get-away car. Lyons made this argument in his PCR, and the Mississippi Supreme Court found that Lyons failed to meet the *Strickland* standard.  [7-2].

The Court has reviewed the trial transcript and finds that this claim has no merit.  Most notably, Lyons fails to provide a legitimate basis for objecting to the admission of the cloth, which was indisputably found at the secondary crime scene.  Although he argues that "the information was undisclosed" to him, *see* [11] at 33, and that he "knew nothing of this evidence" or that it had "ever been submitted to the lab to get a DNA profile," *id.* at 36, the trial transcript makes clear that his counsel was aware of the existence of both the fabric and related DNA testing.  Moreover, counsel's decision not to object to the admission of the purple cloth falls within the ambit of trial strategy.  At trial, defense counsel used the admission of the cloth to spotlight the fact that Lyons's DNA was not found on it.  [8-5] at 72-73.  Thus, counsel's decision not to object to the admission of the cloth "resulted from an informed trial strategy and fell within the wide range of trial tactics that constitute reasonable assistance."  *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011).  Accordingly, the Mississippi Supreme Court's application of *Strickland* was reasonable, and this argument fails to form the basis for habeas relief.

iv.    Was defense counsel ineffective when he failed to object to the display of the victim's photo during closing argument?

Lyons argues that he suffered ineffective assistance of counsel when his counsel failed to object to the display of the victim's photo during closing argument.  In ruling on Lyons's PCR, the Mississippi Supreme Court found that defense counsel's conduct did not constitute ineffective assistance of counsel under *Strickland*.  A review of the trial transcript shows that

27

defense counsel used the photo to his advantage as part of his closing argument, stating "I have no problem with his photograph being up there while I'm talking. Because his life will not be honored by you convicting an innocent man." [8-5] at 93; *see also* [8-6] at 56.

The undersigned finds that the Mississippi Supreme Court's application of *Strickland* on this issue was reasonable, as counsel's decision not to object fell within the ambit of trial strategy. *See Richards*, 566 F.3d at 564; *see also Montgomery v. Secretary*, No. 3:18cv227-J-39PDB, 2020 WL 1820508 (M.D. Fla. Apr. 10, 2020)(finding that counsel was not ineffective under *Strickland* when counsel did not object to display of victim's photo during closing argument)(quoting *Stephens v. State*, 975 So. 2d 405, 416-417 (Fla. 2007)("Counsel is not ineffective for making a tactical decision not to object to statements and photographs introduced during the State's closing arguments when those statements and photographs were not improper."). Accordingly, this argument does not form the basis of habeas relief.

v.    Was defense counsel ineffective when he failed to object to the trial court's denial of Jury Instruction D-10 on circumstantial evidence?

Lyons argues that his counsel was ineffective when he failed to object to the trial court's denial of his preferred Instruction D-10, which addressed circumstantial evidence. However, it was Lyons's counsel who proffered Instruction D-10 in the first place. *See* [8-2] at 15. And although the court denied the instruction, the trial judge explained that "[i]f you proffer something and it's denied, then I consider the record preserved for the sake of that instruction." [8-5] at 83. Accordingly, Lyons suffered no prejudice from any failure to "object" to the trial court's denial of his counsel's request for Instruction D-10. Further, as discussed *supra* in Ground Eight, the trial court granted Instruction D-3 which was a "quantum-of-proof" instruction correctly stating Mississippi law. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.

28

1994)("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").
The Mississippi Supreme Court found that Lyons's counsel was not ineffective on this issue, *see*
[7-2], and in so doing, it reasonably applied the *Strickland* standard.

III.    <u>CONCLUSION</u>

Lyons has failed to establish that the state court's adjudication of his claims was contrary
to, or involved an unreasonable application of, clearly established Supreme Court law or was
based on an unreasonable determination of the facts.  Accordingly, the undersigned recommends
that habeas relief be denied and this action be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed
findings, conclusions, and recommendation contained within this report and recommendation
within fourteen (14) days after being served with a copy shall bar that party, except upon
grounds of plain error, from attacking on appeal the proposed factual findings and legal
conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v.
United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 2nd day of November, 2021.


<u>/s/ F. Keith Ball</u>                                  .
UNITED STATES MAGISTRATE JUDGE